# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

PIANTE WALLACE,

                    Petitioner,              :      Case No. 1:19-cv-429

     - vs -                                          District Judge Douglas R. Cole
                                                     Magistrate Judge Michael R. Merz

WARDEN,
  Warren Correctional Institution,

                                             :
                    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Piante Wallace, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 7), and the Return of Writ (ECF No. 8).

Magistrate Judge Litkovitz, in her Order for Answer, set a deadline for Petitioner's reply of twenty-one days after the Return was filed (ECF No. 3, PageID 23). Since the Return was filed and served by mail on August 29, 2019, Petitioner's reply was due September 23, 2019, but no reply has been filed.

**Litigation History**

Wallace was indicted July 7, 2014, on counts of aggravated murder in violation of Ohio Revised Code § 2903.01(B); murder in violation of Ohio Revised Code § 2903.02(B), and

1

aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1). Each count included a firearm specification (Indictment, State Court Record, ECF No. 7, Ex. 1). At a jury trial almost two years after the Indictment, Wallace testified in his own defense but was convicted of murder and aggravated robbery, both with firearm specifications, but acquitted on the aggravated murder charge. The trial court sentenced him to eighteen years to life in prison.

Represented by new counsel, Wallace appealed to the Ohio First District Court of Appeals, raising the following assignments of error:

> FIRST ASSIGNMENT OF ERROR: The trial court erred as a matter of law by overruling Appellant's motion to strike the State's Certification under Crim. R. 16.
>
> SECOND ASSIGNMENT OF ERROR: The trial court erred as a matter of law by allowing hearsay evidence to be admitted in violation of Appellant's right to a fair and impartial trial.
>
> THIRD ASSIGNMENT OF ERROR: The trial court erred as a matter of law by permitting other acts testimony into evidence thus prejudicing Appellant's right to a fair trial.
>
> FOURTH ASSIGNMENT OF ERROR: The trial court erred as a matter of law by permitting the State to impeach its own witness in violation of Appellant's right to a fair trial.
>
> FIFTH ASSIGNMENT OF ERROR: The trial court erred as a matter of law by permitting the prosecutor to make improper remarks to the jury and to introduce improper evidence thus prejudicing Appellant's rights to a fair trial.
>
> SIXTH ASSIGNMENT OF ERROR: The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Appellant's convictions.

(Appellant's Brief, State Court Record, ECF No. 7, Ex. 18). The First District overruled all the Assignments of Error and affirmed the conviction. *State v. Wallace*, 2017-Ohio-9187 (Ohio App. 1st Dist. Dec. 22, 2017).

Represented by new counsel, Wallace appealed to the Supreme Court of Ohio raising only

one proposition of law:

### PROPOSITION OF LAW NO. I:

Under Crim. R. 16(D) a court is supposed to require the State to set forth in any motion for certification, case-specific reasoning for granting certification. The statute does not permit the Prosecution to widely and freely invoke this rule as a basis for strategic preparation and when the State only is able to offer general assertions in a certification hearing, it is insufficient to meet the requirements under Crim. R. 16(D).

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 7, Exhibit 22). The Supreme

Court of Ohio declined to exercise appellate jurisdiction. *State v. Wallace*, 2018-Ohio-1795 (2018).

Wallace then filed his *pro se* Petition for Writ of Habeas Corpus in this Court on May 23, 2019[1],

pleading the following grounds for relief:

**Ground One**: The trial court erred as a matter of law by overruling Appellant's motion to strike the State's Certification under Crim. R. 16.

**Factual Support**: The trial court prejudiced Defendant by violating his Constitutional right to trial by overruling our motion to strike State's Certification under Crim. R. 16 infringing on his rights to a discovery.

**Ground Two**: The trial court erred as a matter of law by allowing hearsay evidence to be admitted in violation of Appellant's right to a fair and impartial trial.

**Ground Three**: The trial court erred as a matter of law by permitting other acts testimony into evidence thus prejudicing Appellant's rights to a fair trial.

**Ground Four**: The trial court erred as a matter of law by permitting the State to impeach its own witness in violation of Appellant's right to a fair trial.

(Petition, ECF No. 1, PageID 8, 10, 11, and 13).

---

[1] Although the Petition was not docketed until May 30, 2019, Wallace is entitled as a filing date to the date he deposited the Petition in the prison mail system, which he avers was May 23, 2019 (Petition, ECF No. 1, PageID 18).

## Analysis

In each of his four Grounds for Relief, Wallace asserts that some error of the trial court deprived him of his federal constitutional right to a fair trial. That right is protected by the Sixth and Fourteenth Amendments to the United States Constitution. Federal habeas corpus relief is available only to remedy violations of the federal constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

This basic principle has several implications for this case. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle, supra.* That means we do not sit as an appeals court on questions of Ohio law. We cannot grant habeas corpus relief even if we find that the Ohio courts erred in applying Ohio law.

Nor does every violation of state procedural rules in a criminal case rise to the level of denial of due process or a fair trial. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547

F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

A second general principle applicable here is the requirement that a habeas petitioner exhaust available state court remedies for asserted federal constitutional violations. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Exhaustion requires that the federal claim be "fairly presented" to the state forum. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine, supra; Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

If a habeas petitioner has used a state court procedure in which he could have fairly presented a federal constitutional claim, but failed to do so, he has procedurally defaulted on that claim and it also cannot be heard in habeas corpus. The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'"  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009).  This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004).  "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)].  The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.  See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

Wallace's Petition is reviewed with these basic habeas corpus principles in mind.

**Ground One:  Failure to Strike State's Certification of Nondisclosure**

In his First Ground for Relief, Wallace asserts he was denied his constitutional right to a

fair trial when the trial court failed to strike the prosecutor's Certification of Nondisclosure.  This claim was presented to the First District Court of Appeals as the First Assignment of Error.  The appellate court decided it as follows:

## II. Certification of Nondisclosure

[*P35]  In his first assignment of error, Wallace contends that the trial court erred in overruling his motion to strike the state's certification for nondisclosure of witnesses under Crim.R. 16. He argues that the that the certification did not contain any specific grounds on which the state was relying, but only general assertions that that witnesses have been threatened, harassed, or murdered. This assignment of error is not well taken.

[*P36]  We review issues relating to discovery under an abuse-of-discretion standard. See *State v. Parson,* 6 Ohio St.3d 442, 445, 6 Ohio B. 485, 453 N.E.2d 689 (1983); *State v. Williams,* 1st Dist. Hamilton No. C-130277, 2014-Ohio-1526, ¶ 14.  Crim.R. 16(I) requires each party to "provide to opposing counsel a written witness list, including names and addresses of any witnesses it intends to call[.]"

[*P37]  But, under Crim.R. 16(D)(1), if "[t]he prosecuting attorney has reasonable, articulable grounds to believe that the disclosure will compromise the safety of a witness, victim, or third party, or subject them to intimidation or coercion," the prosecuting attorney shall certify to the court that he or she is not disclosing discoverable materials. *Williams* at ¶ 15. Reasonable, articulable grounds may include, but are not limited to, "the nature of the case, the specific course of conduct of one or more parties, threats or prior instances of witness tampering or intimidation, whether or not those instances resulted in criminal charges, whether the defendant is pro se, and any other relevant information." Crim.R. 16(D). Generalized assertions are insufficient to meet the requirements of Crim.R. 16(D). *Williams* at ¶ 17. The trial court may not reject the prosecuting attorney's certification for nondisclosure unless it finds that the prosecution has abused its discretion. *State v. Woods,* 1st Dist. Hamilton Nos. C-130413 and C-130414, 2014-Ohio-3892, ¶ 34.

[*P38]  On September 24, 2014, the state filed the certification, which provided that it sought "non-disclosure of the name and address of certain civilian witness[es] * * *. The disclosure of such information will compromise the safety of these witnesses and

subject these people to intimidation or coercion." The certification contained mostly general assertions about other murder cases. But, it also stated,

> In the current case, the victim, Markeith Peek, was murdered in front of eyewitnesses. There are also additional civilian witnesses the State intends to call to piece together the chain of events and the aftermath of the crimes. The State seeks protection for these witnesses in the form of nondisclosure. The defendants are well known robbery boys in the neighborhood and beyond. They are also known to be violent. Citizens are afraid of these individuals and their extended network. In fact, many of the witnesses are afraid as well.

[*P39]  Subsequently, Wallace filed a motion to strike the certification of nondisclosure on the basis that it was a "cookie cutter" pleading that did not contain case-specific facts. The trial court overruled the motion and set a date for a hearing under Crim.R. 16(F), which provides that "[u]pon motion of the defendant, the trial court shall review the prosecuting attorney's decision of nondisclosure * * * for abuse of discretion during an in camera hearing conducted seven days prior to trial, with counsel participating."

[*P40]  This court has stated that while generalized assertions in the prosecutor's certification are insufficient to meet the requirements of Crim.R. 16(D), that defect could be cured during the hearing provided for in Crim.R. 16(F). *Williams*, 1st Dist. Hamilton No. C-130277, 2014-Ohio-1526, at ¶ 18. Nevertheless, we have concerns about the lack of specificity in the certification and whether that defect was cured at the hearing. The staff notes to Crim.R. 16 state that "the certification need not disclose the contents or means of a non-disclosed material, but must describe it with sufficient particularity to identify it in judicial review as described in Division (F)."

[*P41]  But we need not reach that issue in this case. On February 2, 2015, a hearing on the certification was held before a different trial judge, seven days before the first scheduled trial date. The court held that the prosecution had not abused its discretion and that it would not require the state to disclose the witnesses' names. The state timely disclosed the names of the witnesses before the first trial date as required by Crim.R. 16(F)(5). But the trial did not go forward on that date. The case was continued for reasons unrelated to the

certification, and the trial did not start until June 7, 2016, 16 months later.

[*P42] Consequently, Wallace knew the names of the witnesses for a substantial amount of time before the trial. He did not claim he could not go forward at that time, and he has not demonstrated any prejudice on the basis that the witnesses' names were not immediately disclosed. Therefore, any error was harmless beyond a reasonable doubt. See *State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035 (1976), paragraph seven of the syllabus; *State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 35 (1st Dist.). We overrule Wallace's first assignment of error.

*Wallace*, 2017-Ohio-9187.

In his First Ground for Relief, Wallace asserts that the failure to the trial court to strike the prosecutor's declaration violated "his Constitutional right to trial." However, in arguing his First Assignment of Error to the First District, he made no constitutional claim at all. He cited only Ohio R. Crim. P. 16 and Ohio cases interpreting that rule. (Appellant's Brief, State Court Record, ECF No. 7, Ex. 18, PageID 83.)

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th

Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Based on his failure to fairly present this claim to the state courts, Respondent asserts it is procedurally defaulted. Because he filed no reply, Wallace has not responded to this defense.

The Magistrate Judge agrees that Wallace failed to fairly present his First Ground for Relief to the First District as a constitutional claim He has therefore procedurally defaulted it and Ground One should be dismissed with prejudice.

**Ground Two: Trial Court Allowance of Hearsay Denied Petitioner a Fair Trial**

In his Second Ground for Relief, Wallace asserts he was denied a fair trial by the admission of hearsay testimony against him. While the Constitution does guarantee a criminal defendant a fair trial and thus Ground Two states a constitutional claim, it is procedurally defaulted in the same way as the First Ground. That is, it was not presented as a constitutional claim to the First District

Court of Appeals.

Wallace raised a hearsay question as his Second Assignment of Error on direct appeal. But as with the First Ground, he made no constitutional claim that admission of hearsay denied him a fair trial. Only Ohio Rules of Evidence and cases interpreting them are cited, except for *Bruton v. United States*, 391 U.S. 123 (1968), which was cited in support of Wallace's claim that admission of the coconspirator statements violated his Confrontation Clause rights (Appellant's Brief, ECF No. 7, Ex. 18, PageID 83). That is, there was no claim that admission of hearsay *per se* denied Petitioner a fair trial, which is the claim made here.

The First District Court of Appeals decided the second Assignment of Error as follows:

### III. Hearsay

[*P43] In his second assignment of error Wallace contends that the trial court erred by admitting hearsay into evidence. He argues that the court should not have allowed testimony regarding a statement by an alleged coconspirator to be introduced without requiring the state to first present independent proof of the conspiracy. This assignment of error is not well taken.

[*P44] Evid.R. 801(D)(2)(e) provides that "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." The statements of a coconspirator are not admissible until the proponent has made a prima facie showing of the existence of a conspiracy by independent proof. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 102. This rule merely requires that the state present sufficient evidence to raise the inference of a conspiracy. *State v. Johnson*, 2015-Ohio-3248, 40 N.E.3d 628, ¶ 104 (10th Dist.).

[*P45] This court has held that the court's premature admission of evidence under Evid.R. 801(D)(2)(e) can be harmless if independent prima facie proof of the conspiracy is produced before the case is presented to the jury. *State v. Jones,* 1st Dist. Hamilton No. C-090137, 2010-Ohio-4116, ¶ 21. Further, courts are authorized to make rulings that admit evidence that is "conditionally relevant," that is, evidence that is relevant only if other evidence subsequently

presented demonstrates facts necessary to establish the relevance of the previously admitted evidence. *State v. Adkins,* 136 Ohio App.3d 765, 773, 737 N.E.2d 1021 (3d Dist.2000).

[*P46] Wallace initially raised the issue during Amison's testimony when the state elicited statements by Steele during the phone call that Amison had overheard. The trial court allowed the testimony conditionally upon a proffer from the state.

[*P47] The state informed the court that it had grave concerns that Amison might not appear in court the following Monday, so they had called him as a witness out of order. The state told the court about Irwin, who would testify that he had been in the car with the three codefendants, that they had discussed that they needed money, and that they needed to "jug" someone, meaning to rob him. The state also said that Raven would testify that she had received the victim's phone from her brother after the robbery and that she had loaned her car to Steele the night of the robbery. The court warned the state that the testimony would be struck if no independent proof of the conspiracy was ultimately presented.

[*P48] When the state called Irwin as a witness, it again addressed the issue. It asked to proffer Wallace's statement to the police in which he admitted that he and his codefendants had planned to rob the victim. The statement was going to be admitted through the testimony of Detective Hilbert, who had interviewed Wallace after the shooting. A defendant's own statements may establish the independent proof of the conspiracy. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 101; *State v. Duerr,* 8 Ohio App.3d 396, 402, 8 Ohio B. 511, 457 N.E.2d 834 (1st Dist.1982).

[*P49] The trial court conditionally allowed Irvin's testimony, and the state later presented the evidence that it had proffered. Consequently, any error by the trial court in allowing the conspirator's statements into evidence before the proof of the independent conspiracy was harmless.

[*P50] Wallace further argues that the admission of the hearsay statements violated his right to confront the witnesses against him. The United States Supreme Court has held that only testimonial statements implicate the Confrontation Clause. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *State v. Lukacs* 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 11 (1st Dist.).

[*P51] Evid.R. 801(D)(2)(e) specifically provides that statements made by a coconspirator are not hearsay. They are inherently nontestimonial because the purpose for making the statements is not for later use at trial. *State v. Braun,* 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 116. Accord *State v. Metter,* 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶ 36; *State v. Howard,* 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 89. Further, the Supreme Court has specifically identified statements in furtherance of a conspiracy as examples of statements that are inherently nontestimonial. *Braun* at ¶ 116, citing *Crawford* at 56. Consequently, the admission of the statements did not violate the Confrontation Clause.

[*P52] Finally, Wallace argues that the trial court erred in admitting the records of Peek's texts because they were hearsay. The only one of Peek's texts that was of any significance was a text just before the time of the murder. Someone texted him and asked what he was doing, and he answered, "nun Chilling." This text was admissible to rebut Wallace's claim that Peek was aggressive and looking to shoot someone the night of the murder. It was a statement of Peek's then existing state of mind and it was admissible into evidence under Evid.R. 803(3). See *State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 218-226; *State v. Sutorius,* 122 Ohio App.3d 1, 7-8, 701 N.E.2d 1 (1st Dist.1997).

[*P53] Other texts in which people called Peek by name were not admitted for their truth. Instead they were admitted to show that they were, in fact, sent to Peek. Since they were not admitted for the truth of the matter asserted, they were not hearsay under Evid.R. 801(C). See *State v. Thomas,* 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980); *State v. Brewster,* 1st Dist. Hamilton Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 50.

[*P54] Wallace has not specified any other of Peek's texts that he claims were hearsay. The appellant bears the burden to show error by reference to the record. To be considered on appeal, errors by a trial court must be argued and supported by legal authority and citation to the record. App.R. 16(A); *State v. Brown,* 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 24. In the absence of further specification, we decline to go through all of Peek's texts and decide whether each of them is hearsay. Consequently, we overrule Wallace's second assignment of error.

*State v. Wallace*, 2017-Ohio-9187.    Thus the First District was not presented with and did not

decide a constitutional claim that admission of hearsay was a *per se* denial of a fair trial.

13

Respecting the Confrontation Clause claim, which Petitioner has not brought forward in habeas, the First District decided that claim on the merits and found that coconspirator statements are not excludable under the Confrontation Clause because they are not testimonial in nature.

The leading modern case from the Supreme Court on the Confrontation Clause is *Crawford v. Washington*, 541 U.S. 36 (2004)(holding that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). Wallace has presented no argument that the coconspirator statements admitted here were testimonial in nature and indeed has not brought the Confrontation Clause claim forward at all.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). If Wallace had brought the Confrontation Clause claim forward to this Court, the Magistrate Judge would recommend dismissing it on the merits, because the First District's decision on the Confrontation Clause claim is not an objectively unreasonable application of *Crawford* and its progeny.

Instead, Wallace makes the more general claim that admission of hearsay denied him a fair trial. That claim is procedurally defaulted because it was never fairly presented to the state courts. Moreover, Wallace's entire Second Assignment of Error, however construed, is procedurally defaulted by his failure to seek Ohio Supreme Court review of this assignment.

Ground Two should therefore be dismissed with prejudice.

14

**Ground Three:  Denial of a Fair Trial by Admission of Other Bad Acts**

In his Third Ground for Relief, Wallace claims he was denied a fair trial because the trial court admitted other bad acts evidence.  This was his Third Assignment of Error on direct appeal and the First District decided it as follows:

### IV. Other-Acts Evidence

 [*P55]  In his third assignment of error, Wallace contends that the trial court erred by admitting other-acts testimony. He argues that the court should not have allowed police officer Brandon Rock to testify about an encounter with Wallace about two weeks before the murder in which Wallace had a backpack containing marijuana, a bag of bullets and a cardboard case to a 9 mm firearm. This assignment of error is not well taken.

 [*P56]  Generally the prosecution in a criminal case may not present evidence that the defendant has committed other crimes or acts independent of the crime for which the defendant is being tried to establish that he acted in conformity with his bad character. Evid.R. 404(B); *State v. Wright,* 1st Dist. Hamilton No. C-150715, 90 N.E.3d 162, 2017-Ohio-1568, ¶ 43. But Evid.R. 404(B) also provides that other bad acts are admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *State v. Shedrick*, 61 Ohio St.3d 331, 337, 574 N.E.2d 1065 (1991); *Wright* at ¶ 43.

 [*P57]  Because Evid.R. 404(B) codifies an exception to the general rule, it must be strictly construed against admissibility. *State v. Coleman*, 45 Ohio St.3d 298, 299, 544 N.E.2d 622 (1989); *Wright* at ¶ 44. Nevertheless, the other acts need not be similar to the crime at issue. If the acts tend to show by substantial proof any of the items enumerated in Evid.R. 404(B), evidence of other acts is admissible. *Coleman* at 299-300; *Wright* at ¶ 44.

 [*P58]  Officer Rock testified that on June 3, 2014, he heard a gunshot while on patrol. A short time later, he saw Steele, followed by Wallace, walking through a parking lot where drug sales often occurred. After Wallace placed his backpack on the ground, Officer Rock went to talk with him. Wallace permitted the officer to look

15

through his backpack. He found a bag of bullets, an empty gun box, and two bags of marijuana. He seized those items, but he did not arrest Wallace, who he permitted to leave the area. Although the state contends that Wallace did not object to this testimony at trial, the record shows that he did.

[*P59] The state had the burden to show that Wallace purposely caused Peek's death while committing, attempting to commit or while fleeing after committing an aggravated robbery. See R.C. 2903.01(B) and 2903.02(B). To prove aggravated robbery, the state had to prove that Wallace possessed a firearm. See R.C. 2911.01(A)(1). No guns were recovered at the scene and no bullet was found during Peek's autopsy. Of the three conspirators, Wallace was the only one alleged to have had a gun. Officer Rock's testimony was relevant to show that Wallace had access to and the opportunity to use a firearm. Thus it shows knowledge, absence of mistake, preparation or plan, and intent.

[*P60] Under the circumstances, we cannot hold that the trial court abused its discretion by allowing the other acts to be admitted into evidence. See *State v. Carusone*, 1st Dist. Hamilton No. C-010681, 2003-Ohio-1018, ¶ 29. Consequently, we overrule Wallace's third assignment of error.

*State v. Wallace,* 2017-Ohio-9187.

Although in the body of his brief and the text of this Assignment of Error, Wallace claimed denial of a right to a fair trial, he argued this Assignment entirely in terms of Ohio evidence law. There is no citation to any federal constitutional authority (Appellant's Brief, State Court Record, ECF No. 7, Ex. 18, PageID 84) and the First District did not consider itself as deciding a federal constitutional question. Therefore this Ground Three is procedurally defaulted for lack of fair presentation, as well as for failure to present it to the Supreme Court of Ohio. It is as well without merit: the Supreme Court has never held that admission of other bad acts evidence violates the fair trial guarantee. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court

16

refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).

Ground Three should therefore be dismissed with prejudice.

**Ground Four:  Denial of Fair Trial By Allowing the State to Impeach its Own Witness**

In his Fourth Ground for Relief, Wallace claims that allowing the State to impeach its own witness deprived him of a fair trial.  Here again in pleading his Fourth Assignment of Error on appeal, Wallace mentioned his right to a fair trial, but argued the Assignment entirely in terms of Ohio law, not federal constitutional law (Appellant's Brief, State Court Record, ECF No. 7, Ex. 18, PageID 84, 106-07.)  Thus this claim was not fairly presented to the Court of Appeals as a federal constitutional claim.

The First District decided the Fourth Assignment of Error as follows:

> ### V. State's Impeachment of its Own Witness
>
> [*P61]  In his fourth assignment of error, Wallace contends that the trial court erred by allowing the state to impeach its own witness. Under Evid.R. 607(A), the party calling a witness may attack the witness's credibility by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 27.
>
> [*P62]  Counsel may show surprise if the witness's trial testimony is materially inconsistent with the witness's prior statements and counsel had no reason to believe that the witness would recant when called to testify. *State v. Holmes,* 30 Ohio St.3d 20, 23, 30 Ohio B. 27, 506 N.E.2d 204 (1987); *Thomas* at ¶ 27. Surprise is a factual issue left to the trial court's discretion. *State v. Diehl,* 67 Ohio St.2d 389, 390-391, 423 N.E.2d 1112 (1981); *Thomas* at ¶ 27. Affirmative damage occurs when the witness testifies to facts that contradict, deny, or harm the party's trial position. *Thomas* at ¶ 27. A neutral answer such as "I don't remember" does not, in and of itself, constitute affirmative damage. *State v. Williams,* 1st Dist. Hamilton No. C-150249, 2016-Ohio-5827, ¶ 28, 71 N.E.3d 592.

[*P63] Wallace contends that the state was allowed to impeach Raven's testimony to the effect that she did not know Irvin and did not remember seeing him the night of the murder. She acknowledged that she had loaned her car to Steele, but stated that she did not know if Irvin was with Steele and Herron when they returned the car. She also denied driving anyone home that night. These were not neutral answers. She was not saying she did not know the answer to a question or did not remember a certain fact. She specifically stated that she was certain she did not know Irvin at all, which was inconsistent with her statement to Detective Hilbert shortly after the murder. Consequently, the state made a showing of affirmative damage.

[*P64] Wallace failed to object to the state impeaching Raven Herron with her prior inconsistent statement. He has not demonstrated that the trial court abused its discretion in allowing the state to impeach its own witness, much less that any error rose to the level of plain error. See *Wright*, 1st Dist. Hamilton No. C-150715, 2017-Ohio-1568, at ¶ 49; *Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, at ¶ 31. Consequently, we overrule Wallace's fourth assignment of error.

*State v. Wallace,* 2017-Ohio-9187. Thus the First District evinced no understanding that it was considering a federal constitutional claim. Secondly, it noted that Wallace had made no contemporaneous objection and therefore review could be for plain error only. Consideration of an issue on a plain error basis is enforcement of the contemporaneous objection rule. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000). Finally, Wallace procedurally defaulted on this claim when he failed to appeal it to the Supreme Court of Ohio. Ground Four should therefore be dismissed with prejudice as procedurally defaulted.

18

**Conclusion**

On the basis of the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 17, 2020.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.